**IJH LAW**
Ignacio J. Hiraldo
(*pro hac vice*)
1200 Brickell Ave
Suite 1950
Miami, FL 33131
Email: ijhiraldo@ijhlaw.com
Telephone: 786.469.4496

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Boulevard, Suite 1400
Ft. Lauderdale, Florida 33301
Telephone: (954) 400.4713
Email: mhiraldo@hiraldolaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Anne Vitasek,** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **Community Care Health Network, LLC,** <br><br> Defendant. | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> (JURY TRIAL DEMANDED) |

CLASS ACTION COMPLAINT

Plaintiff Anne Vitasek brings this class action against Defendant Community Care Health Network, LLC, d/b/a Matrix Medical Network ("Defendant"), and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1.  This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

2.  Defendant is a healthcare company providing in-home and mobile health care.

3.  As part of its business, Defendant engages in unsolicited telemarketing directed towards prospective customers with no regard for consumers' privacy rights.

4.  Defendant's telemarketing consists of placing prerecorded calls to consumers soliciting them to purchase its goods and/or services.

5.  Upon information and belief, Defendant caused thousands of pre-recorded messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6.  Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

**JURISDICTION AND VENUE**

7.  Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than

Defendant. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.

## PARTIES

9. Plaintiff is a natural person who, at all times relevant to this action, was a citizen of the state of Texas.

10. Defendant is a Delaware Limited Liability Company with its principal address at 9201 E Mountain View #220, Scottsdale, AZ, 85258. Defendant directs, markets, and provides business activities throughout the State of Arizona.

## THE TCPA

11. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

12. The TCPA further prohibits: (1) any person from initiating a call to any residential telephone line; (2) using an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(B).

13. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

14. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

15. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

16. In 2012, the FCC issued an order further restricting automated <u>telemarketing</u> calls, requiring "prior express <u>written</u> consent" for such calls. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

17. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

18. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether

a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

19. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

20. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

21. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id*.

22. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

23. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

**FACTS**

24. On November 18, 2019, Defendant called Plaintiff's cellular telephone number ending in 9845 ("9845 Number") with a prerecorded message.

25. Plaintiff is the subscriber and/or sole used of the 9845 number.

26. The prerecorded message that Plaintiff received stated the following:

> Hi, my name is Amanda and I'm calling on behalf of Humana Health Care. This is not a sales call. I work for Matrix Medical Network and I want to let you know you are eligible for a service available to you at no additional cost provided by Humana Health Care. Please call me back at 18552050431 to learn more. Again, that number is 18552050431 and I'm calling with Matrix Medical Network on behalf of Humana Health Care. Thank you.

27. The pre-recorded message was sent from the telephone number 903-303-5620, a number which upon information and belief, is owned and/or operated by or on behalf of Defendant.

28. The number referenced in the prerecorded message, 855-205-0431, is owned and/or operated by or on behalf of Defendant.

29. When Plaintiff listened to the message, Plaintiff was able to determine that it was a prerecorded message. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODE-JSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

30. The purpose of Defendant's call to Plaintiff was to market Defendant's goods and services.

31. Specifically, the prerecorded message attempts to solicit Plaintiff to become a client of Defendant's at home health services for which Defendant would then make a profit.

32. As described by former employees, Defendant makes its profit by aggressively marketing seniors to use Defendant's at home health care services—even when not necessary—and then charging insurers for these visits:

> Job is to convince seniors to have an in-home health visit that is part of their health plan's preventive healthcare coverage. Working there, I felt as if I were "chained

5
CLASS ACTION COMPLAINT

to my desk." Most of the people who answered the phone were angry because they got voicemail messages EVERY DAY from Matrix.[1]

[N]o matter what they tell you this is a sales job even though you are calling to set home health assessments with a nurse practicioner [sic].[2]

You are hounded to see patients who have been badgered by the Matrix call center to see you. Look on line for the numerous complaints from Medicare Advantage patients who complain about the company. It can feel unsafe to go into homes of people who don't want you there and your manager does not care. It's all about the numbers. You will be penalized by not seeing your quota of patients. It's also unclear the test results that Matrix sends out at the expense of Medicare. No one tells you what the results are and the patients are not informed either. This is not good practice. You are forced to make diagnoses based on reimbursement to Matrix and not based on your judgement.[3]

Customer service can't take no for an answer from the beguiled members. They are cajoled into the visits by relentless calling. Knowing all this I always tried to make it enjoyable and worthwhile for the member. The main purpose of Matrix is to capture as many Medicare dollars as possible for the Insurance company via the NP history, physical, and exam.[4]

These companies tend to harass seniors, typically holding Medicare Advantage plans, calling them day and night until they relent, allowing a NP or PA to perform a house-call.[5]

Pressuring elderly people to accept nurse practitioners to gain access to homes to do a health assessment in order to assign high risk factors to individuals in order to have Medicare in turn over charged the Federal Government.[6]

This company takes advantage of people who are think they should have this in home comprehensive health assessment or they will lose their health insurance.[7]

---

[1] https://www.glassdoor.com/Reviews/Matrix-Medical-Network-call-center-Reviews-EI_IE399732.0,22_KH23,34.htm (last visited December 3, 2019).

[2] *Id*.

[3] *Id*.

[4] https://www.glassdoor.com/Reviews/Matrix-Medical-Network-np-Reviews-EI_IE399732.0,22_KH23,25.htm (last visited December 3, 2019).

[5] *Id*.

[6] *Id*.

[7] https://www.glassdoor.com/Reviews/Matrix-Medical-Network-medicare-Reviews-EI_IE399732.0,22_KH23,31.htm (last visited December 3, 2019).

33. On or about November 20, 2019, Defendant again called Plaintiff.

34. When Plaintiff answered the phone, she informed Defendant's employee that she did not want to receive any more calls.

35. Despite having asked Defendant to stop calling her, on November 22, 2019, Defendant again called Plaintiff with a prerecorded telemarketing message.

36. On November 25, 2019 and December 2, 2019, Defendant again called Plaintiff.

37. Upon information and belief, Defendant caused similar calls to be placed to individuals residing within this judicial district and nationally and numerous consumers have complained about Defendant's telemarketing practices:

> I answered since I have [Health Alliance insurance "HAP"]. Said they represent HAP and are called Matrix Medical, and that as part of my services I can get a home visit from a health specialist. Well I am healthy and don't even need prescriptions, so I told her no thank you and to take me off their calling list.[8]

> Matrix Medical/Nurse Practitioner Scheme[.] This appears to be to be basically an attempt by Matrix Medical and perhaps others to extract money out of Medicare/Medicaid by signing up those on these programs for still another unneeded service.  That is, an attempt by insurance companies to increase their income be creating more services and thus more income for the insurance company.[9]

> Have been receiving calls from this number.  We don't answer.  Voicemail says it is MatrixCare offering us a 'special service' at no cost through our health insurance.  We've gotten these calls last year and they wanted to do an in-home health assessment.  I told them absolutely not.  We have our regular doctor appointments and we don't need anyone coming to the home and 'casing the joint'.[10]

> Called at 8:00 in the AM, left lengthy message about a home health visit.. Called again at 9:00 this time I answered. Caller said she called to set up a time for a health care visit from a nurse. Told her she did not need one and hung up.. I am sure they will be calling again.  This is just a way for them to squeeze more out of medicare... [sic] They try to make you think it is mandatory.[11]

---

[8] https://800notes.com/Phone.aspx/1-855-403-0967/4 (last visited December 3, 2019).

[9] *Id.*

[10] *Id.*

[11] *Id.*

38. At no point in time did Plaintiff provide Defendant with express written consent to be contacted by Defendant with a prerecorded message.

39. Defendant's unsolicited prerecorded message call caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's calls also inconvenienced Plaintiff and caused disruption to her daily life.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

40. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

41. Plaintiff brings this case on behalf of the below defined Classes:

> **No Consent Class:** All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a prerecorded call, from Defendant or anyone on Defendant's behalf, to said person's cellular or residential telephone number.
>
> **Revocation Class:** All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a prerecorded call, from Defendant or anyone on Defendant's behalf, to said person's cellular or residential telephone number *after* making a request to Defendant to not receive future calls.

42. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in the Classes but believes the members of the Classes number in the several thousands, if not more.

**NUMEROSITY**

43. Upon information and belief, Defendant has placed calls to telephone numbers belonging to thousands of consumers throughout the United States without their prior express

consent. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

44. The exact number and identities of the members of the Classes are unknown at this time and can be ascertained only through discovery. Identification of the members of the Classes is a matter capable of ministerial determination from Defendants' call records.

### COMMON QUESTIONS OF LAW AND FACT

45. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

> (1) Whether Defendant made non-emergency calls to Plaintiff and the Class members' cellular or residential telephones using a prerecorded message;
>
> (2) Whether Defendant can meet their burden of showing that they obtained prior express written consent to make such calls;
>
> (3) Whether Defendant's conduct was knowing and willful;
>
> (4) Whether Defendant is liable for damages, and the amount of such damages; and
>
> (5) Whether Defendant should be enjoined from such conduct in the future.

46. The common questions in this case are capable of having common answers. If Plaintiff's claims that Defendant routinely transmits prerecorded calls to cellular and residential telephone numbers and transmits text messages to telephone numbers assigned to cellular telephone services are accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

47. Plaintiff's claims are typical of the claims of the members of the Classes, as they

are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

48.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

50.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Class)

51.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

52.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any … prerecorded or

artificial voice… to any telephone number assigned to a … cellular telephone service ….” 47 U.S.C. § 227(b)(1)(A)(iii).

53.  Further, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party[.]"  47 U.S.C. § 227(b)(1)(B).

54.  Defendant – or third parties directed by Defendant – used prerecorded messages to make non-emergency telephone calls to the cellular and residential telephones of Plaintiff and other members of the Class.

55.  These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the phones of Plaintiff and the other members of the putative Class when its calls were made.

56.  Defendant violated § 227(b)(1) of the TCPA by using pre-recorded messages to make non-emergency telephone calls to the cellular and residential phones of Plaintiff and the other members of the putative Class without their prior express consent.

57.  As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff Anne Vitasek, on behalf of herself and the other members of the Class, prays for the following relief:

a.  A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

    b.    A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

    c.    An injunction prohibiting Defendant from calling telephone numbers assigned to cellular or residential telephones using prerecorded messages without the prior express consent of the called party;

    d.    An award of actual, statutory damages, and/or trebled statutory damages; and

    e.    Such further and other relief the Court deems reasonable and just.

### JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

### DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the communication or transmittal of the prerecorded messages as alleged herein.

Date: December 3, 2019

                Respectfully submitted,

**IJH LAW**
*/s/ Ignacio J. Hiraldo*
Ignacio Hiraldo
*Pro Hac Vice*
Florida Bar No. 56031
1200 Brickell Ave. Suite 1950
Miami, FL 33131
Email: IJHiraldo@IJHLaw.com
Telephone: 786-496-4469

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
*(Pro Hac Vice* to be filed)
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com

---

12
CLASS ACTION COMPLAINT

Telephone: 954.400.4713

*Counsel for Plaintiff and the Classes*